**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CMS ENERGY CORPORATION; CONSUMERS ENERGY COMPANY; DTE ENERGY COMPANY; DTE ELECTRIC COMPANY; DTE GAS COMPANY; CMS ENERGY CORPORATION EMPLOYEES FOR BETTER GOVERNMENT; DTE ENERGY COMPANY POLITICAL ACTION COMMITTEE; CASE LANCASTER; and AYESHA LANCASTER,

Plaintiffs,

v.

JONATHAN BRATER, in his official capacity as the Director of the Michigan Bureau of Elections; DANA NESSEL, in her official capacity as Attorney General of the State of Michigan, or her successor in office; and JOCELYN BENSON, in her official capacity as Secretary of State of the State of Michigan, or her successor in office,

Defendants,

and

MICHIGANDERS FOR MONEY OUT OF POLITICS BALLOT COMMITTEE, CLEAN WATER ACTION, VOTERS NOT POLITICIANS, and JOANNA WHALEY,

Proposed Intervenor-Defendants.
______________________________________/

Case No. 1:26-cv-03168

Hon. Robert J. Jonker

Magistrate Judge Sally J. Berens

**BRIEF IN SUPPORT OF PROPOSED INTERVENOR-DEFENDANTS' MOTION TO INTERVENE**

**ORAL ARGUMENT REQUESTED**
**EXPEDITED CONSIDERATION REQUESTED**

**INTRODUCTION**

On November 3, 2026, Michigan voters approved Ballot Proposal 2 of 2026 by massive margins. *See* Kelly House, *Michigan Elections: Voters Approve Proposal 2 Money Out of Politics Question*, Bridge Mich. (Nov. 3, 2026), https://bridgemi.com/michigan-politics/michigan-elections-voters-decide-on-proposal-2-money-out-of-politics-question/ ("The Associated Press declared the proposal passed at about 9:45 p.m., with 4 out of every 5 votes supporting the measure in early returns.").

Proposal 2 makes a series of connected reforms to campaign finance in Michigan elections. As relevant to the current action, Proposal 2 bars certain political contributions by "an electric utility, gas utility, principal of an electric utility or gas utility, or entity that is affiliated with an electric utility or gas utility." MCL 169.230a (added by Proposal 2).

This provision does not in any way limit the extent to which utility companies or their affiliates can speak on their own behalf in the electoral process. It only bars their contributions to candidates for offices that regulate them. The People of Michigan voted to adopt this provision in the wake of numerous scandals regarding utility-company campaign contributions to the state officials who regulate them, both in Michigan and in other states. Just last year, the Sixth Circuit upheld federal convictions in a quid pro quo corruption scheme involving massive utility company donations to a nonprofit entity affiliated with a state officeholder in Ohio. *See United States v. Householder*, 137 F.4th 454 (6th Cir. 2025), *cert. denied*, 146 S. Ct. 2604 (2026). *See also* Press Release, U.S. Sec. & Exch. Comm'n, *SEC Charges FirstEnergy Corp. with Fraud in Connection with Political Corruption Scheme* (Sept. 12, 2024), https://www.sec.gov/enforcement-litigation/administrative-proceedings/33-11302-s ("According to the SEC's order against FirstEnergy, between 2017 and 2020, FirstEnergy and affiliates made approximately $60 million in payments to a 501(c)(4) entity controlled by Householder in exchange for specific official action

for the benefit of FirstEnergy and affiliates ….”). Recent criminal court filings in Michigan show that “DTE Energy employees directed the transfer of money from one dark money nonprofit to another tied to a Michigan official,” in the amount of $100,000. Karlee Weinman, *DTE Dark Money Ties Revealed in Criminal Court Filings*, Energy & Pol’y Inst. (June 23, 2025), https://energyandpolicy.org/dte-dark-money-ties-revealed/.

Days after the election, and weeks before any official certification of the results, Plaintiffs filed this action seeking declaratory and injunctive relief against enforcement of Proposal 2. ECF No. 1. Proposed Intervenors include the committee that drafted, sponsored, and defended the new law, organizations that supported the effort to adopt Proposal 2 and continue to participate in the political process and have an interest in Proposal 2’s utility contribution ban remaining in place. They seek to intervene to defend that ballot proposal.

Proposed Intervenors have met each requirement for intervention as of right. The motion is timely—indeed, it is being filed less than a week after the filing of the case. Proposed Intervenors have substantial legal interests in Proposal 2’s validity, interests that the Sixth Circuit has recognized in previous cases. *See, e.g.*, *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1245–47 (6th Cir. 1997). Plaintiffs’ proposed relief would impair those interests. And the State Defendants, who must weigh enforcement priorities and institutional considerations, and who may seek limiting constructions or endorse other interpretations of Proposal 2 that Proposed Intervenors reject, may not adequately represent them. At a minimum, the Court should permit intervention under Rule 24(b), as it did for the sponsor of a voter-initiated constitutional amendment in *Daunt v. Benson*, No. 19-cv-614, 2019 WL 12050350, at *2 (W.D. Mich. Aug. 28, 2019), and *Banerian v. Benson*, No. 22-cv-54, ECF No. 31, PageID.458 (W.D. Mich. Feb. 11, 2022) (three-judge court).

## BACKGROUND

### A. Proposal 2

Proposal 2 makes a series of related amendments to the Michigan Campaign Finance Act, MCL 169.201 *et seq*. This case involves a challenge to Proposal 2's utility contribution ban. That ban bars "an electric utility, gas utility, principal of an electric utility or gas utility, or entity that is affiliated with an electric utility or gas utility" from making "a contribution or donation directly or indirectly to" the following individuals and entities: the "governor, attorney general, state senator, state representative, or a candidate for such office," as well as members of the Michigan Public Service Commission; various entities affiliated with those individuals; political party committees; or committees that make contributions to the state officeholders and candidates it covers. MCL 169.230a (added by Proposal 2).

### B. Proposed Intervenors

Michiganders for Money Out of Politics (MMOP) is the ballot question committee that drafted Proposal 2, circulated petitions for six months, submitted 561,282 signatures to the Michigan Board of State Canvassers, defended the certification of the proposal before the Board and the Michigan Supreme Court, and ran the successful campaign to encourage voters to adopt the proposal. Ex. C, Decl. of Sean McBrearty ¶¶ 5–10. It intends to continue "to participate in state rulemaking procedures, educate the public about the implementation and impact of Proposal 2, review and publicize disclosure reports filed under Proposal 2, and otherwise ensure that the goals of this proposal are met in its implementation." *Id.* ¶ 11.

Clean Water Action (CWA) is a 501(c)(4) organization whose mission is "to protect the environment, human health, economic well-being, and community quality of life through grassroots organizing, public education, and political action." Ex. D, Decl. of Emily Woodcock ¶ 2. CWA "has been involved in MMOP since its inception," including by fielding a "professional

canvass team" that "spent six months collecting 50,628 signatures for Proposal 2." *Id.* ¶ 4. In its lobbying efforts in the Michigan Legislature, CWA repeatedly finds itself in opposition to the interests pursued by regulated utilities, and it has often found its efforts blocked by legislators who receive large contributions from those utilities and affiliated entities. *Id.* ¶¶ 5–6.

Voters Not Politicians ("VNP") is "a nonpartisan advocacy organization that works to effect structural and systemic democracy reform through engagement of people in Michigan." Ex. E, Decl. of Christy McGillivray ¶ 2. VNP participated in the campaign to enact Proposal 2, by "drafting and reviewing petition language, establishing the MMOP governance structure, developing campaign plans for the circulation phase, procuring legal representation, collecting signatures, lobbying elected officials, and funding the campaign." *Id.* ¶ 4. In its advocacy efforts, VNP has found itself at odds with legislators financed by regulated utilities. "For example, DTE's and Consumers' Energy Political Action Committees have made substantial contributions to elected officials who have in turn championed voter suppression bill packages." *Id.* ¶ 5.

Joanna Whaley was elected in November 2026 to serve as the state Representative for Michigan's Second House District. Ex. F, Decl. of Joanna Whaley ¶ 3. Her "campaign committee has never accepted contributions from DTE Energy, Consumers Energy, their political action committees, or, to [her] knowledge, any entity affiliated with them." *Id.* ¶ 5. She intends to run for re-election in 2028. *Id.* ¶ 6. Without Proposal 2, she will be put to a choice: "accept contributions from the utilities and their affiliates," or "decline them and run against an opponent who accepts them." *Id.* ¶ 18. She intends to continue to decline utility-affiliated contributions; in the absence of Proposal 2, that decision will constitute "unilateral disarmament" and place her at a disadvantage in the electoral process. *Id.*

### C. This Lawsuit

Plaintiffs filed suit on November 5, 2026. ECF No. 1. They claim that Proposal 2's utility contribution ban violates the First Amendment. *Id.* They seek declaratory relief, as well as preliminary and permanent injunctions, against enforcement of that provision. *Id.* They filed a motion for preliminary injunction alongside the complaint. ECF No. 10, PageID.50.

## ARGUMENT

### I. Proposed Intervenors Are Entitled to Intervene as of Right

"On timely motion, the court must permit anyone to intervene" who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). By its terms, the rule establishes four requirements for intervention as of right: (1) timeliness; (2) a sufficient interest in the action; (3) that the action "may as a practical matter impair or impede" that interest; and (4) that existing parties may not "adequately represent" that interest. Proposed Intervenors readily satisfy all four of these criteria.

### A. The Motion Is Timely

There can be no doubt that this motion is timely. Proposed Intervenors filed this motion four days after the filing of the complaint, before any responsive pleading was due. An intervention motion "filed just two weeks after the complaint" is "timely as a matter of law." *Mich. State AFL-CIO*, 103 F.3d at 1245. *Accord Daunt*, 2019 WL 12050350, at *2 (holding that "a motion for intervention brought within two weeks after the filing of the complaint is timely as a matter of law"). The preliminary injunction motion is pending, but the time to file a responsive brief has not yet passed. Proposed Intervenors intend to comply with all relevant deadlines.

### B. Proposed Intervenors Have Substantial Legal Interests in This Action

The Sixth Circuit has "adopted a rather expansive notion of the interest sufficient to invoke intervention of right." *Lucas Cnty. Bd. of Comm'rs v. EPA*, 169 F.4th 689, 705 (6th Cir. 2026) (cleaned up). *Accord Wineries of the Old Mission Peninsula Ass'n v. Twp. of Peninsula*, 41 F.4th 767, 771–72 (6th Cir. 2022). The requirement "is a lower threshold than the injury-in-fact requirement of Article III standing." *Est. of Lewis ex rel. Duran v. City of Columbus*, 158 F.4th 814, 823 (6th Cir. 2025). "A specific legal or equitable interest is not required." *Lucas Cnty. Bd. of Comm'rs*, *169* F.4th at 705 (cleaned up). Although "[t]he inquiry into the substantiality of the claimed interest is necessarily fact-specific," *Mich. State AFL-CIO, 103*, F.3d at 1245, the proposed intervenors must merely show that they have "a significant interest in the subject matter of the underlying case." *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999).

Proposed Intervenors' right to intervention follows directly from the Sixth Circuit's decision in *Michigan State AFL-CIO*. There, several labor organizations and union officials challenged the constitutionality of an amendment to Michigan's campaign finance law that imposed new restrictions on union political spending. *See Michigan State AFL-CIO*, F.3d at 1244. The Michigan Chamber of Commerce sought to intervene. *See id.* The district court denied the motion, but the Sixth Circuit reversed, holding that the Chamber was "entitled to intervention as of right." *Id.* at 1248. The Sixth Circuit rested its holding on the following facts:

> the Chamber was (1) a vital participant in the political process that resulted in legislative adoption of the 1994 amendments in the first place, (2) a repeat player in Campaign Finance Act litigation, (3) a significant party which is adverse to the challenging union in the political process surrounding Michigan state government's regulation of practical campaign financing, and (4) an entity also regulated by at least three of the four statutory provisions challenged by plaintiffs.

*Id.* at 1247.

Proposed Intervenors have the same sort of interests as the Sixth Circuit found sufficient for intervention as of right in *Michigan State AFL-CIO*. Proposed Intervenor MMOP was "a vital participant in the political process that resulted in" adoption of Proposal 2. *Id.* MMOP drafted the proposal's language, circulated petitions for six months, submitted 561,282 signatures to the Michigan Board of State Canvassers, defended the certification of the proposal before the Board and the Michigan Supreme Court, and ran the successful campaign to encourage voters to adopt the proposal. *See* Ex. C, Decl. of Sean McBrearty ¶¶ 5–10.

Proposed Intervenors Clean Water Action and Voters Not Politicians were also key participants in the process—they were members of the coalition that drafted Proposal 2, sent their own staff or volunteers to gather signatures and promote the measure to voters once it was on the ballot. *See supra* Background Part B. Both of these proposed intervenors remain continually engaged in the political process and often find their political and advocacy work to be in conflict with the utilities that are covered by Proposal 2's ban. *See id.* They will be disadvantaged in that work if the ban is lifted. They are thus "significant part[ies] which [are] adverse to the challenging [utilities] in the political process surrounding Michigan state government's regulation of practical campaign financing." *Mich. State AFL-CIO*, 103 F.3d at 1247.

Proposed Intervenor Joanna Whaley has a distinct and significant interest in Proposal 2 remaining in effect. She has refused to accept utility-affiliated contributions and intends to run for re-election in 2028. Proposal 2 protects her from facing a challenger financed by massive utility-affiliated contributions. It thus prevents her decision to forgo those contributions from constituting "unilateral disarmament." *See supra* Background Part B.

The stake the Proposed Intervenors have in this litigation goes far beyond the sort of "general ideological interest" the Sixth Circuit has found insufficient. *Coal. to Defend Affirmative*

*Action v. Granholm*, 501 F.3d 775, 782 (6th Cir. 2007); *accord Northland Fam. Plan. Clinic, Inc. v. Cox*, 487 F.3d 323, 345 (6th Cir. 2007). This litigation will affect the ability of the Proposed Intervenors to achieve their goals in the political process, because a judgment invalidating Proposal 2 would enhance the power of the Proposed Intervenors' adversaries in that process. That concrete interest is plainly significant and protectable. *See Est. of Lewis*, 158 F.4th at 824 (sufficient interest where intervenor "was a vital participant in the process that produced the policies the Estate now challenges and seeks to permanently enjoin, and its members will be regulated by those policies and any changes to them"). Indeed, the Sixth Circuit has recognized that a competitive injury is sufficient to demonstrate a significant protectable interest that supports intervention. *See Grutter*, 188 F.3d at 399.

### C. Disposing of This Action May Impair Proposed Intervenors' Interests

The Sixth Circuit has repeatedly stated that "[t]he burden for demonstrating impairment of a substantial interest" is "minimal." *Lucas Cnty. Bd. of Comm'rs*, 169 F.4th at 705 (cleaned up). "To satisfy this element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied." *Mich. State AFL-CIO*, 103 F.3d at 1247.

Proposed Intervenors readily satisfy that burden. If Proposal 2 is invalidated, MMOP's interest in securing its passage will be entirely vitiated, and the other intervenors will continue to face a political process that is skewed against their efforts due to massive contributions by regulated utilities.

### D. The State Defendants May Not Adequately Represent Proposed Intervenors' Interests

This is a case in which "there is sufficient doubt about the adequacy of representation to warrant intervention." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 (1972). As the

Sixth Circuit has explained, "a presumption of adequate representation arises" when "the proposed intervenor and a party to the suit share the same ultimate objective." *Est. of Lewis*, 158 F.4th at 827 (cleaned up). But an intervenor "can overcome that presumption if it shows that the current parties have interests adverse to its own." *Id.* The intervenor's burden is "minimal in that it need not prove that the [existing party's] representation will be inadequate; it need only show that it 'may be' inadequate." *Id.* (cleaned up). *See also Trbovich*, 404 U.S. at 538 n.10 ("The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal.").

There are good reasons to believe representation may be inadequate here. Defendants represent the public at large and must weigh considerations Proposed Intervenors do not share. These include Defendants' obligations to take account of enforcement priorities and resource limits and their interest in preserving enforcement discretion. These interests may lead Defendants to concede the invalidity of certain applications of Proposal 2 or agree to narrowing constructions to it, or even to enter into a settlement of the case. Proposed Intervenors, by contrast, have a direct stake in every provision of Proposal 2.

This divergence of interests is sufficient to satisfy the adequacy prong. Proposed Intervenors need not show that it is certain that their litigation decisions will diverge from those of Defendants—"Certainty about future events is not required." *Est. of Lewis*, 158 F.4th at 827 (cleaned up). Defendants' representation of Proposed Intervenors' interests "may be" inadequate, and that is enough. *Id.*

## II. Alternatively, the Court Should Grant Permissive Intervention

Fed. R. Civ. P. 24(b)(1)(B) provides that, "[o]n timely motion, the court may permit anyone to intervene" who "has a claim or defense that shares with the main action a common question of

law or fact." The Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

If the Court does not grant intervention as of right, it should grant permissive intervention under Rule 24(b). As we have shown above, this motion is timely. Proposed Intervenors' defense—that Proposal 2 is constitutional—is the central question in the case. And intervention at this embryonic stage will not cause delay or prejudice: Proposed Intervenors will meet existing deadlines and coordinate with Defendants to avoid duplication.

This Court has previously granted permissive intervention to sponsors of voter-initiated measures. In *Daunt*, *supra*, the Court permitted Voters Not Politicians, the sponsor and drafter of the constitutional amendment creating the Michigan Independent Citizens Redistricting Commission (and a Proposed Intervenor here), to intervene in defense of the constitutionality of that commission. The Court found "no dispute that [the ballot sponsor] has a defense that shares with the main action a common question of law or fact." *Daunt*, 2019 WL 12050350, at *2. And given the "early stage of the case," the Court found "no significant concern that permitting intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id.* And against the objection that the Secretary of State adequately represented the ballot sponsor, the Court explained that "having input from both [the sponsor] and Defendant Benson, as co-defendants, will be helpful to the Court in analyzing the merits." *Id.* The same is true here.

Indeed, courts have repeatedly granted permissive intervention to the sponsors of ballot initiatives in cases challenging the adoption or implementation of those initiatives. In *Banerian*, *supra*, this Court granted permissive intervention to Voters Not Politicians in a challenge to a districting plan drawn by the Michigan Independent Citizens Redistricting Commission. In *Dinner Table Action v. Schneider*, No. 24-cv-00430, 2025 WL 604885, at *1–3 (D. Me. Feb. 25, 2025),

the court granted permissive intervention to "the nonpartisan fair elections organization EqualCitizens, citizens' initiative proponents Cara and Peter McCormick, and Maine State Senator Richard A. Bennett" in a challenge to a ballot initiative that regulated independent expenditures. *See also Vivid Ent., LLC v. Fielding*, 774 F.3d 566, 571–72 (9th Cir. 2014) (noting that district court had granted intervention to the "official proponents" of a ballot initiative in a challenge to the initiative's constitutionality); *S.D. Farm Bureau, Inc. v. Hazeltine*, 340 F.3d 583, 589 (8th Cir. 2003) (noting that district court had granted permissive intervention, in challenge to ballot measure known as Amendment E, to two organizations that were "heavily involved in drafting Amendment E and promoting it during the campaign leading up to the referendum").

The case for intervention is even stronger here, as the proposed intervenors include not just Proposal 2's sponsor but also organizations and a political candidate who have an ongoing interest in participating in the political process under the rules set by that initiative. If the Court does not grant intervention as of right, it should grant permissive intervention.

## III. The Motion Complies with Rule 24(c)

A motion to intervene "must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). Proposed Intervenors have attached their Answer and Affirmative Defenses. *See* W.D. Mich. LCivR 5.7(f).

## CONCLUSION

The Court should grant the motion and permit Proposed Intervenors to intervene as defendants as of right under Rule 24(a)(2) or, alternatively, permissively under Rule 24(b)(1)(B), and should enter the order attached as Exhibit B.

Dated: November 9, 2026

Respectfully submitted,

s/ *Samuel R. Bagenstos*
Samuel R. Bagenstos (P73971)
625 S. State St.
Ann Arbor, MI 48109
(857) 231-1663
sbagen@gmail.com

Stephanie Command*
Tracey Wigglesworth*
1215 K, Suite 2000
Sacramento, California 95814
stephanie@tpl.group
tracey@tpl.group
(916) 674-6440

Counsel for Proposed Intervenor-Defendants

* *Application for admission forthcoming*

**CERTIFICATE OF COMPLIANCE REGARDING WORD COUNT**
(W.D. Mich. LCivR 7.3(b)(ii))

This brief complies with the word limit of W.D. Mich. LCivR 7.3(b)(i) because, excluding the parts of the brief exempted by that rule, it contains 3,394 words. The word count was generated using Microsoft Word.

s/ *Samuel R. Bagenstos*