IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CMS ENERGY CORPORATION; CONSUMERS ENERGY COMPANY; DTE ENERGY COMPANY; DTE ELECTRIC COMPANY; DTE GAS COMPANY; CMS ENERGY CORPORATION EMPLOYEES FOR BETTER GOVERNMENT; DTE ENERGY COMPANY POLITICAL ACTION COMMITTEE; CASE LANCASTER; and AYESHA LANCASTER,

Plaintiffs,

v.

JONATHAN BRATER, in his official capacity as the Director of the Michigan Bureau of Elections; DANA NESSEL, in her official capacity as Attorney General of the State of Michigan, or her successor in office; and JOCELYN BENSON, in her official capacity as Secretary of State of the State of Michigan, or her successor in office,

Defendants.

Case No. 1:26-cv-03168

Hon. Paul L. Maloney

# Plaintiffs' Brief in Opposition to Motion to Intervene

**** Oral Argument Requested ****

## Table of Contents

**Page**

Table of Authorities ........ ii

Introduction ........ 1

Background ........ 2

Argument ........ 3

I. The proposed intervenors are not entitled to intervene as of right. ........ 3

A. The proposed intervenors lack a substantial legal interest in the case that would be impaired absent intervention. ........ 4

B. The intervenors' legal interests would not be impaired. ........ 7

C. The intervenors have not demonstrated that the government defendants may fail to provide adequate representation. ........ 8

II. The proposed intervenors should not be granted permissive intervention when an amicus brief will suffice. ........ 10

Conclusion ........ 14

Certification ........ 15

**Table of Authorities**

**Page(s)**

**Cases**

*Bay Mills Indian Cmty. v. Snyder*,
720 F. App'x 754 (6th Cir. 2018) .......... 11, 12

*Coalition to Defend Affirmative Action v. Granholm*,
501 F.3d 775 (6th Cir. 2007) .......... 1, 4, 5, 6, 7, 12

*Ctr. for Powell Crossing, LLC v. Ebersole*,
696 F. App'x 702 (6th Cir. 2017) .......... 7

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
872 F.3d 57 (1st Cir. 2017) .......... 14

*Estate of Lewis v. City of Columbus*,
158 F.4th 814 (6th Cir. 2025) .......... 6, 7, 10

*Michigan State AFL-CIO v. Miller*,
103 F.3d 1240 (6th Cir. 1997) .......... 6, 10

*Northland Family Planning Clinic, Inc. v. Cox*,
487 F.3d 323 (6th Cir. 2007) .......... 1, 4, 5, 6, 7, 9, 12, 13

*Stringfellow v. Concerned Neighbors in Action*,
480 U.S. 370 (1987) .......... 14

*Stupak-Thrall v. Glickman*,
226 F.3d 467 (6th Cir. 2000) .......... 13

*United States v. Albert Inv. Co.*,
585 F.3d 1386 (10th Cir. 2009) .......... 14

*United States v. Benson*,
No. 1:25-CV-1148, 2025 WL 3520406 (W.D. Mich. Dec. 9, 2025) .......... 7, 11

*United States v. City of Detroit*,
712 F.3d 925 (6th Cir. 2013) .......... 14

*United States v. Michigan*,
424 F.3d 438 (6th Cir. 2005) .......... 8

*Wineries of the Old Mission Peninsula Ass'n v. Twp. of Peninsula*,
41 F.4th 767 (6th Cir. 2022) .......... 7, 10

**Statutes**

42 U.S.C. § 1988 ........ 11

Mich. Comp. Laws § 169.230a ........ 2

**Other Authorities**

Fed. R. Civ. P. 24 ........ 1, 6, 9, 10

Gibbons, Lauren, "Jocelyn Benson: Ban Michigan utility spending to influence politicians," *Bridge Michigan* (Apr. 10, 2026), https://bridgemi.com/michigan-politics/jocelyn-benson-ban-michigan-utility-spending-to-influence-politicians/ ........ 9

*Michigan League of Conservation Voters*, "Historic election a referendum on energy bills, data centers, utility accountability," (Nov. 5, 2026), https://www.michiganlcv.org/historic-election-a-referendum-on-energy-bills-data-centers-utility-accountability/ (last visited Nov. 16, 2026) ........ 9

Skubick, Tim and David Komer, "Nessel Weighs in on grassroots effort for blocking political donations to DTE, Consumers," *FOX2 Detroit* (July 28, 2025), https://www.fox2detroit.com/news/nessel-weighs-grassroots-effort-blocking-political-donations-dte-consumers ........ 9

Weinmann, Karlee, "Michigan utility interests spend $215k to fight political spending ban," *Energy & Policy Institute* (Oct. 26, 2026), https://energyandpolicy.org/dte-consumers-oppose-political-spending-ban/ ........ 9

## Introduction

The proposed intervenors—three organizations and a state legislator who support the Michiganders for Money Out of Politics ("MMOP") initiative—are not entitled to intervene as a matter of right under Rule 24(a). That much is clear from *Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 345 (6th Cir. 2007), and *Coalition to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 781 (6th Cir. 2007). Those cases identify the dividing line: Proponents of ballot initiatives often have the right to intervene in litigation that challenges the process for getting the initiative on the ballot. But they do not have the right to intervene in litigation that challenges the legality or enforcement of the statute after it is adopted, especially when they are not regulated by the statute. At that point, they only have the same interest that the general public does: namely, a generalized interest in ensuring that the statute may be enforced against third parties. That interest can be vindicated by the state—that is, the named defendants here—not by members of the general public, and not by the proposed intervenors.

Permissive intervention under Rule 24(b) is not appropriate here, either. The proposed intervenors identify no reason to believe that they will defend the statute differently or better than the named defendants will. Instead, their intervention threatens only to unnecessarily politicize what should remain a purely legal dispute.

It appears, moreover, that the intervenors' core desire is to have their perspectives heard on the central legal issues that are posed here—that is, on whether section 30a is constitutional. But that interest will not be impaired by denying intervention. It can be fully accommodated by granting the proposed

intervenors leave to file an amicus brief. The plaintiffs have no objection to that approach, and it is far more tailored than adding the proposed intervenors as parties to the case.

The motion to intervene should be denied.

## Background

On November 3, 2026, voters approved the MMOP ballot initiative. The initiative amends the Michigan Campaign Finance Act in several ways, updating disclosure requirements, expanding the statutory definitions of "expenditure" and "electioneering communication," and imposing contribution bans on utilities and certain state contractors.

The part of the MMOP initiative that is primarily relevant here is section 30a, which bans contributions from utilities and their affiliates. *See* Mich. Comp. Laws § 169.230a. On November 5, 2026, the plaintiffs filed this lawsuit, along with a motion for preliminary injunction challenging section 30a on constitutional grounds. (Complaint, RE 1, PageID.1). The plaintiffs' lawsuit seeks only declaratory and injunctive relief, asking the Court to prevent the defendants from enforcing section 30a against them. (Complaint, RE 1, PageID.38-39). As defendants, the plaintiffs named the Michigan government officials who are responsible for enforcing section 30a: the director of the Michigan Bureau of Elections, the Secretary of State, and the Attorney General. (Complaint, RE 1, PageID.1).

On November 9, 2026, several advocacy organizations and a state legislator filed a motion to intervene as defendants. As grounds for their motion, each of the proposed intervenors focuses on their support for section 30a as a policy matter, citing

their generalized interest in a political playing field that is uniquely skewed against utilities.

MMOP's co-chair, for example, explains that the initiative will help prevent utilities from encouraging state government officials not to adopt legislation and policies favored by MMOP. (McBrearty Dep., RE 14-3, PageID.430). Clean Water Action points out that it "competes for [government] officials' attention against regulated utilities" and asserts that if section 30a is enjoined, utilities will be able "to influence lawmakers['] decisions about . . . legislation," making Clean Water Action's efforts to shape the legislative landscape "more difficult." (Woodcock Dec., RE 14-4, PageID.435–436). Voters Not Politicians argues that utility contributions "hamper" its "ability to advocate" for legislative reforms. (McGillivray Dep., RE 14-5, PageID.442). And Representative Whaley asserts that, absent section 30a, utilities will contribute to her political "opponents" and attempt to "influence legislators generally." (Whaley Dep., RE 14-6, PageID.450).

None of the proposed intervenors has any role in or responsibility for enforcing section 30a. Nor do any of them argue that they are regulated by section 30a.

## Argument

### I. The proposed intervenors are not entitled to intervene as of right.

In order to intervene as a matter of right, a proposed intervenor must establish four elements: "(1) that the motion to intervene was timely; (2) that the intervenor has a substantial legal interest in the subject matter of the case; (3) that its ability to protect that interest may be impaired in the absence of intervention; and (4) that the parties already before the court may not adequately represent its interest."

*Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 343 (6th Cir. 2007). If the proposed intervenor fails to meet any one of these factors, the motion must be denied. *Coalition to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 780 (6th Cir. 2007).

### A. The proposed intervenors lack a substantial legal interest in the case that would be impaired absent intervention.

Despite the proposed intervenors' attempts to manufacture a substantial legal interest in the case, they do not have one. "[A]n organization involved in the process leading to the adoption of a challenged law, does not have a substantial legal interest in the subject matter of a lawsuit challenging the legality of that already-enacted law, unless the challenged law regulates the organization or its members." *Coalition*, 501 F.3d at 781. That is because the core interest of an organization that advocates for passage of a ballot initiative is in ensuring that the initiative qualifies for the ballot and is presented to voters at the election. *Northland Family Planning*, 487 F.3d at 345. Thus, if a lawsuit is filed challenging the process by which a statute is proposed and adopted by the voters, a group that advocated in its favor may have a cognizable legal interest in defending the process and ensuring that the initiative appears on the ballot. *Id.*

Once the election is held and the initiative is adopted by the voters, however, the analysis is much different. *Id.* at 345. After the statute is adopted, the state assumes the responsibility of "enforcing and defending it as it is written." *Id.* at 346. At that point, the advocacy group has only the same general interest in enforcing a statute that everyone else in the state does. Because the public interest in the

enforceability of the enacted statute "is entrusted for the most part to the government," *id.* at 345, a particular organization or individual's hope that the government zealously enforces the law against third parties is "not . . . cognizable as a substantial legal interest sufficient to require intervention as of right." *Id.* at 346.

The exception to this rule is when the advocacy group or its members are "regulated by the new law," such that they might have an ongoing legal interest in preventing the state from enforcing it *against them* after it is enacted. *Coalition*, 501 F.3d at 782. But none of the proposed intervenors here make any such assertion. Instead, each of the proposed intervenors expresses an interest in ensuring that the MMOP proposal is "enforced" *against others* "as written." (McBrearty Dec., RE 14-3, PageID.432; Woodcock Dec., RE 14-4, PageID.436; McGillivray Dec., RE 14-5, PageID.443). That is exactly what *Northland Family Planning* said was the interest of the state, not of an intervenor. *Id.*, 487 F.3d at 346 (state has the responsibility of "enforcing and defending [legislation] as it is written").

Representative Whaley, for her part, has always refused to accept contributions from utilities and will therefore never be burdened by section 30a. (Whaley Dec., RE 14-6, PageID.445). Instead of arguing that she is regulated by section 30a, she asserts that she has an interest in section 30a remaining enforceable so that utilities cannot contribute funds to her political opponents or to organizations that criticize her during election season. (Whaley Dec., RE 14-6, PageID.448-449). That amounts to the same thing that *Northland Family Planning* deemed insufficient: an interest in the state enforcing a statute against other people.

When a proposed intervenor "has only a general ideological interest in the lawsuit—like seeing that the government zealously enforces some piece of legislation that the organization supports—and the lawsuit does not involve the regulation of the organization's conduct, without more, such an organization's interest in the lawsuit cannot be deemed substantial." *Coalition*, 501 F.3d at 782. "Without these sorts of limitations on the legal interest required for intervention, Rule 24 would be abused as a mechanism for the over-politicization of the judicial process." *Northland Family Planning*, 487 F.3d at 346.

The intervenors try to evade this problem by arguing that they have a unique competitive interest at stake. According to them, a judgment invalidating section 30a would hamper "the ability of the Proposed Intervenors to achieve their goals in the political process" because it "would enhance the power of the Proposed Intervenors' adversaries in that process." (Brief, RE 15, PageID.459). That may be an unvarnished admission of what truly lies behind section 30a; but it is still insufficient to generate a right to intervene. None of the proposed intervenors are "specifically regulated by" section 30a, because it extends only to utilities and their affiliates. *Coalition*, 501 F.3d at 782. At most, the proposed intervenors argue that section 30a affects them by generally altering the political playing field—but that is true of "the entire Michigan citizenry," too. *Id.*

Nor do *Miller* or *Estate of Lewis* help the intervenors. In *Miller*, the intervenor was "regulated by at least three of the four statutory provisions challenged by plaintiffs." *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1247 (6th Cir. 1997).

The same was true in *Estate of Lewis*: there, the intervening organization's "members will be regulated by" the challenged policies. *Estate of Lewis v. City of Columbus*, 158 F.4th 814, 824 (6th Cir. 2025). That makes all the difference. *See Northland Family Planning*, 487 F.3d at 345 (highlighting this factor as "particularly significant"); *Coalition*, 501 F.3d at 782 (no intervention where "the lawsuit does not involve the regulation of the organization's conduct"). In *Benson*, likewise, the intervenors had a specific interest at stake in the litigation: namely, "a privacy interest in preventing the disclosure of their personal information to the federal government." *United States v. Benson*, No. 1:25-CV-1148, 2025 WL 3520406, at *2 (W.D. Mich. Dec. 9, 2025); *see also Wineries of the Old Mission Peninsula Ass'n v. Twp. of Peninsula*, 41 F.4th 767, 773–74 (6th Cir. 2022) (sufficient where intervenors' real estate property rights were implicated). Nothing like that exists here.

**B. The intervenors' legal interests would not be impaired.**

The intervenors fare no better on the impairment element. First, they argue that MMOP's interest in securing the initiative's passage would be vitiated if section 30a was invalidated. But under *Northland Family Planning*, "[a]lthough initiative sponsors have an interest in having the initiatives they support appear on the ballot, their interest stops there." *Ctr. for Powell Crossing, LLC v. Ebersole*, 696 F. App'x 702, 705–06 (6th Cir. 2017) (internal citation omitted). Now that section 30a has been adopted, MMOP has no unique interest in its ongoing validity or enforcement that is superior to any other citizen's interest. There is nothing to be impaired.

Second, the intervenors assert that they would "face a political process that is skewed against their efforts due to massive contributions by regulated utilities."

(Brief, RE 15, PageID.459). But that is the same interest, simply stated in a different way. The general public interest in having statutes enforced against other people is the same general interest that everyone else in Michigan shares.

The scope of relief demanded in the complaint drives home the point. The plaintiffs are seeking only declaratory and injunctive relief enjoining the defendants from enforcing section 30a. (Complaint, RE 1, PageID.38-39). Adding the intervenors as defendants to the lawsuit will not change the scope of the relief that may ultimately be granted. After all, the intervenors do not have the legal responsibility or authority to enforce section 30a in the first place; only the named defendants do. Regardless of whether the judgment gets entered as the plaintiffs are seeking without the intervenors' participation, it will have no direct effect on them.

**C. The intervenors have not demonstrated that the government defendants may fail to provide adequate representation.**

The proposed intervenors also have no basis for suggesting that the state defendants will fail to adequately defend the statute. "Applicants for intervention bear the burden of proving that they are inadequately represented by a party to the suit." *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005). Although this is a fairly minimal burden, is not nonexistent. In fact, a "presumption of adequate representation" arises when proposed intervenors "share the same ultimate objective as a party to the suit." *Id.* at 443–44. Proposed intervenors must overcome that presumption to demonstrate entitlement to intervene. *Id.*

They have not done so here. All that the proposed intervenors offer are assertions that the defendants "represent the public at large," may have executive

enforcement priorities that do not match the intervenors' wishes, and may interpret some of section 30a's provisions differently than the intervenors do. (Brief, RE 15, PageID.460). But those factors exist in any case in which the government is defending the legality of legislation. If they were enough to warrant intervention, then anyone who disagreed with the way in which a government was interpreting or defending a law would be entitled to intervene as a matter of right. That would lead to the same "over-politicization of the judicial process" that the Sixth Circuit has already decried. *Northland Family Planning*, 487 F.3d at 346. It would also rapidly erode Rule 24(a)'s boundaries whenever the government is tasked with defending a statute.

At this point, moreover, the chance that the named defendants may choose not to defend section 30a either in full or in part is wholly speculative. The newly elected Attorney General and Secretary of State have both endorsed the MMOP initiative,[1] and the outgoing Attorney General and Secretary of State approve of its policy goals, as well.[2]

It is not enough for the proposed intervenors to guess about what the defendants might or might not do to defend this lawsuit. To surmount the

[1] Karlee Weinmann, "Michigan utility interests spend $215k to fight political spending ban," *Energy & Policy Institute* (Oct. 26, 2026), https://energyandpolicy.org/dte-consumers-oppose-political-spending-ban/ (last visited Nov. 16, 2026); "Historic election a referendum on energy bills, data centers, utility accountability," *Michigan League of Conservation Voters* (Nov. 5, 2026), https://www.michiganlcv.org/historic-election-a-referendum-on-energy-bills-data-centers-utility-accountability/ (last visited Nov. 16, 2026).

[2] Lauren Gibbons, "Jocelyn Benson: Ban Michigan utility spending to influence politicians," *Bridge Michigan* (Apr. 10, 2026), https://bridgemi.com/michigan-politics/jocelyn-benson-ban-michigan-utility-spending-to-influence-politicians/ (last visited Nov. 16, 2026); Tim Skubick and David Komer, "Nessel Weighs in on grassroots effort for blocking political donations to DTE, Consumers," *FOX2 Detroit* (July 28, 2025), https://www.fox2detroit.com/news/nessel-weighs-grassroots-effort-blocking-political-donations-dte-consumers (last visited Nov. 16, 2026).

presumption of adequate representation, they must instead "present[ ] concrete evidence that the [named defendants'] litigation strategy may meaningfully diverge from the one [the intervenors] would pursue." *Estate of Lewis*, 158 F.4th at 828. In *Wineries*, for example, the government defendant conceded that it likely could not represent the specific interests of the proposed intervenors. *Wineries*, 41 F.4th at 775. Here, by contrast, the defendants have not yet filed an answer, taken a position on any of the plaintiffs' substantive challenges, or signaled in any way that they will not represent the interests of all Michigan citizens, including the proposed intervenors.

If circumstances change in the future and it becomes clear that the Attorney General takes positions adverse to those advocated by the proposed intervenors, the proposed intervenors could potentially refile their motion. *See, e.g.*, *Michigan*, 424 F.3d at 445–46 (noting potential for refiling an intervention motion should circumstances change). At this point, however, the intervenors' motion relies on speculation rather than any identifiable difference in strategy.

## II. The proposed intervenors should not be granted permissive intervention when an amicus brief will suffice.

Permissive intervention is likewise unwarranted, especially when the proposed intervenors can make themselves fully heard through amicus participation. Federal Rule of Civil Procedure 24(b)(1) provides that a court may permit intervention by anyone who "has a claim or defense that shares with the main action a common question of law or fact." *Id.* In deciding whether to allow a party to intervene, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

To begin with, it does not appear that any of the proposed intervenors has "a claim or defense" at all. They assert no counterclaim. Nor do they have any need to interpose a defense. The proposed intervenors have no role in enforcing section 30a, and the plaintiffs are not seeking to enjoin them from doing anything. In fact, the only affirmative defense that the proposed intervenors assert is one in which they expressly distinguish themselves from the defendants: they argue that they cannot be held responsible for fee-shifting under 42 U.S.C. § 1988, even if they embroil the existing parties in protracted litigation and cause the plaintiffs to incur fees as a result. (Proposed Answer, RE 14-1, PageID.423).

Nor is it enough for the proposed intervenors to argue that they take a legal position—"that Proposal 2 is constitutional"—that opposes the central claims in this lawsuit. (Brief, RE 15, PageID.461). The defendants, too, oppose the lawsuit on this ground. A party cannot satisfy the "common question of law" inquiry merely by "mirror[ing] the positions advanced by" one of the parties. *Bay Mills Indian Cmty. v. Snyder*, 720 F. App'x 754, 757 (6th Cir. 2018). Otherwise, "any party wishing to intervene to support one side of a lawsuit could simply reiterate the pleadings of that side and thus meet the 'common question' requirement." *Id.* at 757–58.

Even if the intervenors could satisfy this threshold inquiry, intervention would still be unwarranted. The Court may consider the mandatory intervention factors when evaluating whether permissive intervention is appropriate in light of all of the circumstances. *Bay Mills Indian Cmty.*, 720 F. App'x at 759; *see also Benson*, 2025 WL 3520406, at *6. "The fact that [a proposed intervenor's] position is being

represented" by existing parties, for example, "counsels against granting permissive intervention." *Bay Mills Indian Cmty.*, 720 F. App'x at 759. As explained above, those factors all point against permissive intervention.

Adding the proposed intervenors as parties would also unduly complicate the existing parties' litigation over constitutional questions that are purely issues of law. In *Coalition*, for example, the district court recognized that, "in cases of this importance, [the district courts] are mere way stations on the judicial road to resolution by courts beyond" and reasoned that granting intervention would slow down the process rather than ensure its prompt resolution. *Coalition*, 501 F.3d at 784. The Sixth Circuit upheld the denial of permissive intervention, citing the district court's concern that the proposed intervenors would "seek to file more claims, amend pleadings even further, and inject issues that may not lead directly to a resolution of the issues circumscribed by the present pleadings." *Id.* In *Northland Family Planning*, likewise, permissive intervention was denied because of the concern that the intervenors would take an "ideological" approach to the litigation and could raise numerous issues that would encumber the court's ability to resolve the main dispute. *Northland Family Planning*, 487 F.3d at 346.

Those concerns apply here, too. The proposed intervenors make no guarantee not to inject additional issues into the litigation; all that they promise is to meet existing deadlines and coordinate with the defendants. (Brief, RE 15, PageID.461). And the proposed intervenors' declarations reflect that their primary motivation is political. Both Clean Water Action and Voters Not Politicians acknowledge that they

"compete[] . . . against regulated utilities" for government officials' attention when lobbying them on policy matters. (Woodcock Dep., RE 14-4, PageID.435; McGillivray Dep., RE 14-5, PageID.441). Voters Not Politicians contends that utilities' contributions frustrate its "ability to advocate" for its legislative preferences. (McGillivray Dep., RE 14-5, PageID.442). MMOP explains that the proposal was intended to counteract utilities' ability to discourage state government officials from "passing popular legislation and policies"—that is, the ones preferred by MMOP. (McBrearty Dep., RE 14-3, PageID.430). And Representative Whaley wishes to enter this litigation in order to stop utilities from being able to contribute to her political "opponents" and to "influence legislators generally." (Whaley Dep., RE 14-6, PageID.450). If intervention is granted, the litigation may take on a political hue that would unduly distract from a proper focus on the controlling legal issues.

To the extent the proposed intervenors desire to have their perspectives heard on the legal issues, they have another readily available option: filing an amicus brief. The plaintiffs have no objection to the proposed intervenors submitting an amicus brief on the constitutional issues presented by this case. The ability "to participate as amici curiae" instead of as intervenors "is both meaningful and adequate" for presenting the proposed intervenors' views to this court. *Stupak-Thrall v. Glickman*, 226 F.3d 467, 477 (6th Cir. 2000). There is no need for them to be added as parties. The Court should therefore deny the motion for intervention while permitting the proposed intervenors to participate as amici. *See Northland Family Planning*, 487 F.3d at 346 (noting that the district court granted leave to file amicus).

Finally, in the event that this Court grants permissive intervention, any intervention should be limited to the filing of a brief addressing only the constitutional arguments. Even if granted, intervention is not all-or-nothing; reasonable limitations may be imposed on its scope. *See United States v. City of Detroit*, 712 F.3d 925, 931–32 (6th Cir. 2013) (discussing limited intervention); *see also In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 872 F.3d 57, 64 (1st Cir. 2017) (same); *United States v. Albert Inv. Co.*, 585 F.3d 1386, 1396 (10th Cir. 2009) (same). "Even highly restrictive conditions may be appropriately placed on a permissive intervenor, because such a party has by definition neither a statutory right to intervene nor any interest at stake that the other parties will not adequately protect . . ." *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 382 (1987) (Brennan, J., concurring). In the event that the Court grants permissive intervention, therefore, it should permit the intervenors only to file a single brief addressing the constitutional arguments posed by the plaintiffs.

**Conclusion**

The motion to intervene should be denied.

MILLER JOHNSON
Counsel for Plaintiffs

Dated: November 20, 2026 By /s/ Stephen J. van Stempvoort
Stephen J. van Stempvoort
Andrew C. Goetz
Amanda L. Rauh-Bieri
45 Ottawa Avenue SW, Suite 1100
Grand Rapids, Michigan 49503
(616) 831-1700
vanstempvoorts@millerjohnson.com

**Certification**

As required by Western District of Michigan Local Rule 7.3(b), the plaintiffs certify that this brief contains 3,764 words, excluding the parts of the brief exempted under Local Rule 7.3(b)(i). This word count was generated by the word-processing program used to create the brief, Microsoft Word for Microsoft 365.

By /s/ Stephen J. van Stempvoort